DECISION. *Page 2 
{¶ 1} Defendant-appellant, Jason Reese, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of three counts of felonious assault, each with multiple gun specifications.
 I. A Disagreement in a Bar {¶ 2} In February 2006, Reese joined two acquaintances, Andrew Hrezo and Curtis Williams, at a saloon. After the three had been drinking awhile, Williams made disparaging remarks to a female bar patron, Diana Victoriano. Victoriano was at the bar with her boyfriend, Ryan Skelskey, and four of Skelskey's friends, including Horace Ralston and Bennie Beckman. When Williams continued to make remarks about Victoriano, Skelskey and his friends became angry.
 {¶ 3} At this point, two different accounts unfolded. According to Victoriano and her friends, after some hostile words were exchanged, Hrezo, Williams, and Reese left the bar. Victoriano and Skelskey also wanted to leave the bar after the confrontation, but did not want to get "jumped" on the way to their car, so they asked Ralston, Beckman, and others to walk them to their car. When they left the bar, they saw Hrezo, Williams, and Reese cross a nearby street.
 {¶ 4} Ralston verbally engaged Hrezo, Williams, and Reese, took his shirt off, and asked them if they wanted to fight. Hrezo, Williams, and Reese moved quickly to Hrezo's car as Ralston and others approached. As they got into the car, Reese pulled a gun out and warned Ralston to back up. But Ralston continued to approach with his hands in the air. Reese got in the car, rolled down the window, and fired three shots-one bullet grazed Ralston's ear, one bullet went through Ralston's arm, and one bullet *Page 3 
entered the windshield of George Fiorini's vehicle. (One of the bullets that hit Ralston also hit Fiorini's car a second time.) Fiorini was not otherwise involved; he just happened to be driving by.
 {¶ 5} In a somewhat different version of the events, Hrezo, Williams, and Reese all claimed that after Williams made his disparaging remarks about Victoriano, Ralston intervened and threatened to pull a knife out and stab them. They left the bar and proceeded to walk quickly to their car, but Ralston and others followed. Reese pulled his gun out because, he maintained, Ralston was waving a knife at him and threatening to stab him.
 {¶ 6} Reese also stated that he warned Ralston and the others to back up and let them leave, but the men continued to approach. After Hrezo, Williams, and he got in the car, Reese testified, Ralston and Beckman surrounded the car and blocked their ability to drive away. Reese admitted to then rolling down the window to fire "warning shots," but he did not know that any of the bullets had hit Ralston or Fiorini's vehicle.
 {¶ 7} Reese was charged with one count of felonious assault with three gun specifications in case number B-0601265, as well as two counts of felonious assault, with two gun specifications for each count, in case number B-0601713. A jury found him guilty on all charges. Reese was sentenced to four years' incarceration for the felonious assault in case number B-0601265, with one-year, three-year, and five-year gun specifications (the trial court chose the one-year gun specification rather than the three-year gun specification to be consecutive to the underlying sentence and consecutive to the five-year gun specification), for a total of ten years' incarceration. In case number B-0601713, Reese was sentenced to two years' incarceration for both felonious assaults, with three-year terms for the gun specifications on each assault. These sentences were *Page 4 
concurrent with each other and with the sentences in case number B-0601265, for a total sentence of ten years' incarceration. Reese now appeals.
 II. Sufficiency and Weight of the Evidence {¶ 8} In his first assignment of error, Reese claims that there was insufficient evidence to convict him, and that his convictions were against the manifest weight of the evidence.
 {¶ 9} When reviewing the sufficiency of the evidence to support a criminal conviction, we must examine the evidence admitted at trial in the light most favorable to the state. We must then determine whether that evidence could have convinced any rational trier of fact that the essential elements of the crime had been proved beyond a reasonable doubt.[1]
 {¶ 10} A review of the weight of the evidence puts the appellate court in the role of a "thirteenth juror."[2] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3] A new trial should be granted only in exceptional cases where the evidence weighs heavily against the conviction.[4]
 {¶ 11} Reese was found guilty of three counts of felonious assault. The felonious-assault statute, R.C. 2903.11(A), provides that "[n]o person shall knowingly do either of the following: (1) Cause serious physical harm to another * * *; (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." *Page 5 
 {¶ 12} In case number B-060173, Reese was convicted under both subsections of the statute. The state offered evidence that, after a verbal confrontation at the saloon, Reese pulled a gun from his pants and aimed it at Ralston, warning him not to come any closer. Everyone admitted that Ralston did not stop and continued both to dare Reese to fight and to proceed closer. Hrezo, Williams, and Reese then entered the car, but Reese pulled down his window and fired three bullets. One grazed Ralston's ear and one hit him in the arm.
 {¶ 13} Reese's testimony differed only in that he maintained that Ralston had threatened to stab them. Reese also contended that he was only firing warning shots when he rolled the window down, because Ralston and Beckman had surrounded the car.
 {¶ 14} But Reese argues that he had met his burden of proving that he had acted in self-defense, and, in the alternative, that he had not caused Ralston any serious physical harm.
 {¶ 15} To establish self-defense, a defendant must show "(1) that [he] was not at fault in creating the situation giving rise to the affray; (2) [he] had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) [he] must not have violated any duty to retreat or avoid the danger."[5]
 {¶ 16} Reese's arguments fail because he could not demonstrate the third element of self-defense — that he did not violate "any duty to retreat." Once Reese had entered the car and had avoided the danger from Ralston, his affirmative defense ended. *Page 6 
But he then rolled down the window and fired three shots. Thus, Reese did not demonstrate that he had acted in self-defense.
 {¶ 17} Reese's other argument, that he did not cause serious physical harm to Ralston, is not persuasive. The state presented evidence that one of the bullets went completely through the muscle of Ralston's arm. That injury satisfied the element of serious physical harm.
 {¶ 18} We conclude that a rational factfinder, viewing the evidence in a light most favorable to the state, could have found beyond a reasonable doubt that Reese had knowingly caused or attempted to cause physical harm to Ralston with a deadly weapon. Therefore, the evidence presented was legally sufficient to sustain the convictions.
 {¶ 19} Moreover, our review of the record does not persuade us that the jury clearly lost its way and created a manifest miscarriage of justice in finding Reese guilty. Therefore, his convictions in case number B-0601713 were not against the manifest weight of the evidence.
 III. Doctrine of Transferred Intent {¶ 20} Reese also argues, under case number B-0601265, that he did not knowingly cause or attempt to cause physical harm to Fiorini, and that the doctrine of transferred intent did not apply.
 {¶ 21} The doctrine of transferred intent provides that where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person, and the individual attempting *Page 7 
harm is held criminally liable as if he both intended to harm and did harm the second person.[6]
 {¶ 22} In the present case, Reese was convicted of felonious assault for knowingly attempting to cause physical harm to Fiorini. Reese did not intend to harm Fiorini or to damage his vehicle. Thus the issue was whether Reese should have been held criminally liable for an attempt to cause physical harm to Fiorini based on his intent to assault Ralston.
 {¶ 23} We hold that the doctrine of transferred intent was properly applied to the offense involving Fiorini. Where the defendant shoots wildly in a business district and one of the shots enters the passenger compartment of an occupied automobile, the conviction for attempting to cause serious physical harm should stand. The fact that there was no physical harm to Fiorini's person is irrelevant; the statute did not even require physical harm to the intended victim. If Reese had merely struck the intended victim's car, the conviction would have been proper. Under the law, the unintended victim is accorded the same protection as the intended victim. The intent is what is transferred, not the harm.
 {¶ 24} Accordingly, we overrule the first assignment of error.
 IV. Sentencing on Gun Specifications {¶ 25} In his second assignment of error, Reese argues that the trial court erred by improperly imposing consecutive terms on the one-year and five-year gun specifications. *Page 8 
 {¶ 26} Reese was convicted of three gun specifications in case number B-0601265. Under R.C. 2929.14(D)(1)(a), a trial court cannot impose more than one sentence for the charged gun specifications in addition to the underlying sentence. But this provision only refers to the six-year gun specification under RC. 2941.144, the three-year gun specification under R.C. 2941.145, and the one-year gun specification under RC. 2941.141.
 {¶ 27} The General Assembly has also provided in R.C. 2929.14(E)(1)(a) that any person convicted of a five-year gun specification, for discharging a firearm from a motor vehicle under R.C. 2941.146, must serve a consecutive sentence in addition to any sentence imposed for a conviction on either the one-year or the three-year gun specification. Thus, the trial court was correct in imposing consecutive sentences on the one-year and five-year gun specifications.
 {¶ 28} Although Reese argues that the imposition of multiple terms for the gun specifications violated his rights under the Double Jeopardy Clause of the United States Constitution, we rejected a similar argument in State v. Reid.[7] Accordingly, we overrule the second assignment of error and affirm the judgment of the trial court.
Judgment affirmed. CUNNINGHAM, J., concurs.
[1] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[2] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[3] Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211.
[4] Id.
[5] See State v. Melchior (1978), 56 Ohio St.2d 15, 381 N.E.2d 195. See, also, State v. Thomas (1997), 77 Ohio St.3d 323, 326,673 N.E.2d 1339.
[6] See State v. Crawford, 10th Dist. No. 03AP-986, 2004-Ohio-4652, citing State v. Mullins (1992), 76 Ohio App.3d 633, 636,602 N.E.2d 769.
[7] 1st Dist. No C-060465, 2006-Ohio-6450, jurisdictional motion overruled, 113 Ohio St.3d 1468, 2007-Ohio-1722, 864 N.E.2d 564.
 PAINTER, P.J., concurs in part and dissents in part.