[Cite as *State v. Calhoun*, 2015-Ohio-5505.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | CASE NO.   CA2015-01-002 |
| | : | O P I N I O N |
| - vs - | | 12/30/2015 |
| | : | |
| ANDREW J. CALHOUN, | : | |
| Defendant-Appellee. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI2014-5317


Richard W. Moyer, Clinton County Prosecuting Attorney, Matthew M. Suellentrop, 103 East Main Street, Wilmington, Ohio 45177, for plaintiff-appellant

Robert Baker, Clinton County Public Defender, Jennifer A. Coy, 111 South Nelson Avenue, Suite 4, Wilmington, Ohio 45177, for defendant-appellee


**HENDRICKSON, J.**

{¶ 1}   Plaintiff-appellant, the state of Ohio, appeals a decision of the Clinton County Court of Common Pleas declining to apply the doctrine of transferred intent to elevate an assault conviction for defendant-appellee, Andrew J. Calhoun, from a misdemeanor of the first degree to a felony of the fifth degree where the victim was a local corrections officer. While we agree with the state that the trial court's decision was erroneous, principles of

double jeopardy preclude retrial so that the decision of the trial court is affirmed.

{¶ 2} On October 10, 2014, Calhoun was an inmate at the Clinton County Adult Detention Center. On this date, Calhoun and another inmate, Andrew Ruggles, engaged in a fight. While attempting to defuse the situation and separate Calhoun and Ruggles, corrections officer Betty Kindred was struck in the face by Calhoun. As a result, Calhoun was indicted and charged with assault in violation of R.C. 2903.13(A). The indictment specified the offense was a felony of the fifth degree as the offense occurred on the grounds of a local correctional facility, the victim was a corrections officer and employee of the facility, and Calhoun was in custody in the facility subsequent to his arrest for another crime.

{¶ 3} Calhoun entered a not guilty plea to the charge and waived his right to a jury trial. A bench trial was scheduled for January 8, 2015. The day before trial was set to begin, the state filed a brief advising the trial court it intended to rely on the doctrine of transferred intent in proving its case and in elevating the assault from a first-degree misdemeanor to a fifth-degree felony. The state asserted strict liability for the corrections-officer penalty enhancement contained in R.C. 2903.13(C)(4)(a) applied to elevate the offense.

{¶ 4} The matter proceeded to a one-day bench trial, and the state presented testimony from Kindred. Kindred explained she had just begun her 3:00 p.m. shift as a corrections officer at the Clinton County Adult Detention Center on October 10, 2014, when she observed Ruggles instigate a fight with Calhoun. Kindred, who was in uniform, gave multiple loud, verbal commands for the two inmates to stop fighting, but they ignored her. Kindred testified it was necessary for her to physically intervene to defuse the situation. She inserted herself between the two men and pushed Ruggles away from Calhoun. At this time Ruggles was in front of her, to the left, and Calhoun was located behind her, to the right. Even though Ruggles and Calhoun had been separated and Ruggles had withdrawn from the fight, Calhoun attempted to throw another punch at Ruggles. In the process of throwing this

punch, either Calhoun's forearm or his fist made contact with Kindred's face. She was struck near her right eye, and the glasses she was wearing fell off her face. A photograph of Kindred's injuries, Kindred's incident report statement describing the fight, and the jail's surveillance recording of the fight were entered into evidence.

{¶ 5} Calhoun testified on behalf of his own defense. He explained that while at the detention center, Ruggles approached him, started talking "reckless," and then began punching him in the head. Calhoun defended himself by punching back. Calhoun testified he "absolutely [did] not" intend to hit anyone other than Ruggles. He claimed he did not initially notice that Kindred had gotten between him and Ruggles during their fight. However, once he saw Kindred in front of him, he put his hands up in the air and stopped fighting back.

{¶ 6} After hearing the forgoing testimony, the trial court utilized the doctrine of transferred intent to find Calhoun guilty of first-degree misdemeanor assault, a lesser-included offense of the crime charged. The court declined, however, to apply the doctrine to elevate Calhoun's conviction to a felony of the fifth degree, stating the following:

> Now, there is no doubt in my mind that you are guilty of assault upon Betty Kindred under the doctrine of transferred intent. The question becomes whether the State can use the doctrine of transferred intent to enhance the penalty to a fifth degree felony, because that evaluates [sic] the charge to something other than what you knowingly attempted to do. It elevates it from a misdemeanor to a fifth degree felony. I'm aware of the cases that talk about strict liability, and I understand those rules. But when you look at legislative intent why are corrections officers, why are teachers, why are these clarifications of persons protected more than inmates or other people out on the street. Well, they are protected because they have a very difficult job. * * * [W]hen inmates are knowingly attacking [them] personally, not through a doctrine of transferred intent, higher penalties are imposed, a fifth degree felony.
>
> But what the State wants me to do with the doctrine of transferred intent is to elevate the crime based upon that status. * * * You can't have it both ways. You can't have transferred intent against Ruggles, but, oh, let's elevate it to a fifth degree felony even though [Calhoun] wasn't really trying to harm the

corrections officer. So, I think unlike the State, the teacher's case I cited [*In re A.C.T.*, 158 Ohio App.3d 473, 2004-Ohio-4935 (2d Dist.)] is directly on point because it deals with legislative intent here. * * * [U]nder the doctrine of transferred intent I do not accept these cases [relied on by the state] as standing for the proposition that the State can use the doctrine to elevate a crime where they are indicating that the crime was actually committed against Mr. Ruggles, which would be a misdemeanor. The victim here, Miss. Kindred, and under the Supreme Court case stands in the place of Mr. Ruggles against whom the blow was directed.

{¶ 7} The state now appeals the trial court's decision, asserting the following assignment of error:

{¶ 8} THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO APPLY THE DOCTRINE OF TRANSFERRED INTENT AND THE STRICT LIABILITY PENALTY ENHANCEMENT WHEN THE ASSAULT VICTIM WAS IN A SPECIAL CLASS UNDER R.C. 2903.13(C)(4)(a).

{¶ 9} The state argues in its assignment of error that the trial court erred in refusing to apply the strict liability penalty enhancement set forth in R.C. 2903.13(C)(4)(a) in conjunction with the doctrine of transferred intent. The state further argues the court erred in relying on *In re A.C.T.*, 158 Ohio App.3d 473, 2004-Ohio-4935 (2d Dist.) in support of its decision.

{¶ 10} As an initial matter, we note that our decision has no effect on Calhoun's conviction. Double jeopardy principles bar the state from pursuing a fifth-degree felony assault conviction because the trial court's finding of guilt on the lesser-included misdemeanor assault operated as an acquittal of the greater offense. *See State v. Edmondson*, 92 Ohio St.3d 393, 395 (2001). However, pursuant to R.C. 2945.67(A), this court has the ability to review substantive law rulings made in a criminal case which result in a judgment of acquittal so long as the judgment itself is not appealed. *State v. Bistricky*, 51 Ohio St.3d 157 (1990), syllabus; *State v. Baker*, 12th Dist. Warren No. CA2011-08-088,

- 4 -

2012-Ohio-887; *State v. Streight*, 3d Dist. Auglaize No. 2-01-23, 2002-Ohio-672. Therefore, while we may not review the final verdict rendered against Calhoun, we choose to exercise our discretion under R.C. 2945.67(A) to clarify how the doctrine of transferred intent applies in conjunction with the felony enhancement provisions set forth in subdivision (C) of R.C. 2903.13.

{¶ 11} R.C. 2903.13 provides as follows:

(A)  No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.

* * *

(C)  Whoever violates this section is guilty of assault * * *. Except as otherwise provided in division (C)(2), (3), (4), (5), (6), (7), (8), or (9) of this section, assault is a misdemeanor of the first degree.

* * *

(4)  If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree:

(a)  The offense occurs in or on the grounds of a local correctional facility, the victim of the offense is an employee of the local correctional facility * * *, and the offense is committed by a person who is under custody in the facility subsequent to the person's arrest for any crime or delinquent act, subsequent to the person's being charged with or convicted of any crime, or subsequent to the person's being alleged to be or adjudicated a delinquent child.

A person acts knowingly, "regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 12} Under the well-established doctrine of transferred intent, "an offender who intentionally acts to harm someone but ends up accidentally harming another is criminally liable as if the offender had intended to harm the actual victim." *In re T.K.*, 109 Ohio St.3d

512, 2006-Ohio-3056, ¶ 15. *See also State v. Sowell*, 39 Ohio St.3d 322, 332 (1988); *State v. Solomon*, 66 Ohio St.2d 214, 217 (1981); *State v. Reese*, 1st Dist. Hamilton Nos. C-060576 and C-060577, 2007-Ohio-4319, ¶ 21 ("where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person, and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the second person").

{¶ 13} Applying this doctrine to the facts of present case, the trial court concluded Calhoun was guilty of assault on Kindred, regardless of the fact that she was not the intended victim. The question then became whether the felony enhancement provision set forth in subdivision R.C. 2903.13(C)(4)(a) applied to elevate the offense when the actual victim of the assault was not the intended victim but was an employee of a local correctional facility. In answering this question, the trial court relied on *In re A.C.T.*, a decision rendered by the Second District Court of Appeals.

{¶ 14} In *In re A.C.T.*, a juvenile was charged with delinquency for assaulting a teacher, a felony of the fifth-degree pursuant to former R.C. 2903.13(C)(2)(e) if committed by an adult.[1] *In re A.C.T.*, 2004-Ohio-4935 at ¶ 3. A.C.T. and another student engaged in a

---

1.　{¶ a} The penalty enhancement formerly set forth in R.C. 2903.13(C)(2)(e) is now set forth in R.C. 2903.13(C)(4)(d). This penalty provides as follows:

> {¶ b} (C) Whoever violates this section is guilty of assault * * *. Except as otherwise provided in division (C)(2), (3), (4), (5), (6), (7), (8), or (9) of this section, assault is a misdemeanor of the first degree.

> {¶ c} * * *

> {¶ d} (4) If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree:

> {¶ e} (d) The victim of the offense is a school teacher or administrator or a school bus operator, and the offense occurs in a school, on school premises, in a school building, on a school bus, or while the victim is outside of school premises or a school bus and is engaged in duties or official responsibilities associated with the victim's employment or position as a school teacher or administrator or a school bus operator, including, but not limited to, driving, accompanying, or chaperoning students at or on class or field trips, athletic

physical altercation. *Id.* at ¶ 2. A teacher saw the altercation and yelled at the two students to stop fighting. *Id.* When that did not work, the teacher inserted herself between the two students. *Id.* A punch A.C.T. intended for the other student struck the teacher in the back, injuring the teacher. *Id.*

{¶ 15} Following a hearing, A.C.T. was adjudicated delinquent for assaulting the teacher, a felony of the fifth-degree. *Id.* at ¶ 4. A.C.T. appealed, arguing the trial court incorrectly applied the enhancement section of the assault statute after using the doctrine of transferred intent. *Id.* at ¶ 5-6. The appellate court agreed and reversed the delinquency finding after concluding the state failed to provide sufficient evidence to support A.C.T.'s adjudication of assault on a school teacher. *Id.* at ¶ 25. In reaching this determination, the Second District refused to apply the doctrine of transferred intent, stating the following:

> Both the state and A.C.T. agree that A.C.T. knowingly attempted to strike her fellow student when she accidentally struck [the teacher]. The doctrine of transferred intent stems from case law that reasoned that the law sees all victims as equals. However, in this case, the statute makes a distinction among victims, making it a greater offense to strike a teacher than a student. Moreover, the statute intends to reach those offenders who would knowingly strike a teacher on school grounds while she was acting in her function as a teacher. Clearly, the legislature thought that an offender who would "knowingly" strike a school teacher was a more serious offender than one who would strike a student. We have difficulty in applying the transferred-intent doctrine to this situation wherein the victims are not treated equally under the statute, which dictates that injuring particular victims is a greater offense than injuring other victims.
>
> A.C.T. claims that she did not hear [the teacher] tell the students to stop fighting. Rather, it was not until A.C.T. had struck [the teacher] that A.C.T. realized that [the teacher] was present. Thus, this was not a situation in which A.C.T. continued flailing and punching without any regard for the teacher's presence. On the contrary, A.C.T. had already cocked her arm to strike the fellow student before [the teacher] inserted her body between the fighting students. This case appears to this court to be similar to

events, or other school extracurricular activities or functions outside of school premises.

*In re Mark M.*, [6th Dist. Erie Nos. E-99-028 and E-99-046, 2000 WL 125800 (Feb. 4, 2000)] in which the blows the teacher received were found to be merely incidental or accidental and did not satisfy the mental-culpability requirement of "knowingly." Therefore, * * * we do not believe that A.C.T. meets the mental-culpability element of assault on a school teacher. Thus, the state presented insufficient evidence to support the finding of guilt on A.C.T.'s count of assault on a school teacher.

*Id.* at ¶ 24-25.

{¶ 16} We disagree with the holding and rationale expressed by the Second District. The Ohio Supreme Court has recognized that under the doctrine of transferred intent, even if the victim was not the intended target, a defendant is as criminally culpable for the harm caused to the actual victim as he would be if the victim had been the intended target. *See In re T.K.*, 2006-Ohio-3056, ¶ 16 (upholding a juvenile's adjudication for aggravated rioting and complicity to felonious assault where the juvenile's intent to harm one victim was transferred to two other victims). As Calhoun was knowingly attempting to cause physical harm to Ruggles when he did, in fact, strike and cause physical harm to Kindred, his intent to harm Ruggles is transferred to Kindred, and Calhoun "is held criminally liable as if he both intended and did harm [Kindred,] the second person." *Reese*, 2007-Ohio-4319 at ¶ 21.[2]

{¶ 17} When applying the doctrine of transferred intent to an assault under R.C. 2903.13, the Eleventh District Court of Appeals found it was necessary to view the felony enhancement provisions set forth in subdivision (C) from the standpoint of the victim. *See State v. Kovacic*, 11th Dist. Lake No. 2010-L-018, 2010-Ohio-5663, ¶ 49. In *Kovacic*, a defendant was charged with assaulting a peace officer after the officer broke up a fight

---

2. Not only do we disagree with the holding and rational expressed in *In re A.C.T.*, but we also find the facts of the present case distinguishable from those in *In re A.C.T.* Unlike in *In re A.C.T.*, the evidence presented in the present case demonstrates Calhoun was aware Kindred had inserted herself between the two men to stop the fight, and yet Calhoun continued "flailing and fighting" without any regard for Kindred's presence. Although Calhoun claimed he was unaware of Kindred's presence until after he threw punches at Ruggles, the surveillance recording of the fight demonstrates that Calhoun was aware of another's presence as Calhoun made attempts to swing around Kindred in an effort to connect with Ruggles. Additionally, Kindred had testified she had given multiple loud, verbal commands to Calhoun and Ruggles to stop fighting.

between the defendant and another man. *Id.* at ¶ 4-5. A jury trial was held, and the jury was instructed on the doctrine of transferred intent after the defendant argued that the officer may have been "accidentally hit" when the defendant attempted to strike the other man engaged in the fight. *Id.* at ¶ 12, 26. The defendant was convicted of fourth-degree felony assault, and he appealed his conviction arguing that intent to assault a non-peace officer victim could not be transferred to intent to assault a victim who is a peace officer. *Id.* at ¶ 2. The Eleventh District disagreed and upheld the defendant's conviction, stating the following:

> [C]ase law is well-established that knowledge of the victim's status as a peace officer is not required. "[T]here is no indication whatsoever that the General Assembly intended to impose anything other than strict liability for the peace officer penalty enhancement contained in [former] R.C. 29013.13(C)(3)." *See, e.g., State v. Wilcox,* 160 Ohio App.3d 468, 827 N.E. 2d 832, 2005-Ohio-1745, at ¶ 7 (it is irrelevant whether the appellant knew that those stopping his car were peace officers); *State v. Watson*, 12th Dist. [Madison] No. CA2005-12-038, 2007-Ohio-129, at ¶ 11.

> "The State is not required to demonstrate that the accused kn[ew] or [was] aware of the fact that the victim was a peace officer in order to elevate the offense of assault (from a misdemeanor to a fourth-degree felony under) R.C. 2903.13(C). * * * 'The General Assembly has articulated the elements of R.C. 2903.13 with sufficient clarity to indicate that the victim's status as a police officer shall elevate the criminal offense of assault from a misdemeanor of the first degree to a felony of the fourth degree regardless of whether or not the accused specifically knows of the victim's status as a peace officer.' Id. at ¶ 10." *Watson, supra* at ¶ 8, quoting *State v. Carter*, 9th Dist. [Summit] No. 21474, 2003-Ohio-5042.

> Appellant further suggests the enhancement under [former] R.C. 2903.13(C)(3) is inapplicable when the actor's intent was not to strike a police officer, but another individual. We decline to adopt such a rule. The enhancement is to be viewed from the standpoint of the victim, i.e., if the defendant has committed an assault, and the victim is a police officer, the enhancement at issue is applicable. Therefore, the instruction on transferred intent was proper. This is consistent with the intent of the legislature and prior case law establishing strict liability to the enhancement provision under [former] R.C. 2903.13(C)(3).

*Kovacic* at ¶ 47-49.

**{¶ 18}** The same rational expressed in *Kovacic* is applicable to the present case. Calhoun committed an assault; the assault occurred on the grounds of a local correctional facility and was committed against an employee of the local correctional facility. As such, the enhancement set forth in R.C. 2903.13(C)(4)(a) applies. It is irrelevant that Calhoun did not "intend" to strike a corrections officer as there is no indication whatsoever that the General Assembly intended to impose anything other than strict liability for corrections-officer penalty enhancement contained in R.C. 2903.13(C)(4)(a). *See, e.g., Watson*, 2007-Ohio-129 at ¶ 11; *Wilcox*, 2005-Ohio-1745 at ¶ 7. Once the trial court determined that appellant knowingly caused physical harm to Kindred, the trial court was required to consider the penalty enhancement set forth in R.C. 2903.13(C)(4)(a) and apply it to elevate the offense to a fifth-degree felony assault as the assault took place on the grounds of a local correctional facility, the victim of the offense was an employee of the facility, and the offender committed the offense while in custody of the facility subsequent to his arrest for another crime.

**{¶ 19}** We therefore find that the trial court erred as a matter of law when it refused to apply the strict liability penalty enhancement set forth in R.C. 2903.13(C)(4)(a) in conjunction with the doctrine of transferred intent. The state's assignment of error is sustained. However, notwithstanding the erroneous basis of the trial court's decision, the verdict, judgment, and sentence of the trial court is affirmed as Calhoun cannot twice be put in jeopardy. *See Edmondson*, 92 Ohio St.3d at 395-396.

**{¶ 20}** Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.