[Cite as *State v. Hill*, 2020-Ohio-1237.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-18-1160

    Appellee                                 Trial Court No. CR0201703045

v.

Jamaine Hill                                     **DECISION AND JUDGMENT**

    Appellant                                Decided:  March 31, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**ZMUDA, P.J.**

{¶ 1} Appellant, Jamaine Hill, appeals the June 15, 2018 judgment of the Lucas County Court of Common Pleas following his conviction on seven counts of felonious assault.  We affirm, in part, and reverse, in part, the judgment of the trial court.

## I. Facts and Procedural Background

{¶ 2} On November 27, 2017, appellant was indicted on seven counts of felonious assault in violation of R.C. 2903.11(A)(2) and (D), each a first-degree felony, and possession of a weapon while under disability in violation of R.C. 2923.13(A)(3) and (B), a third-degree felony. Each count of felonious assault included a firearm specification pursuant to R.C. 2941.145(A), (B), (C), and (F). Appellant was arraigned on December 14, 2017. He was determined to be indigent, was appointed counsel, and entered a not guilty plea to all counts.

{¶ 3} On March 12, 2018, appellant filed a motion to suppress any statements given to the investigating officers arguing any statements made were inadmissible pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694 (1966). The state opposed the motion and the trial court conducted a hearing on appellant's motion on March 27, 2018. The trial court denied appellant's motion. Next, the state filed a motion in limine on April 26, 2018, seeking to exclude any evidence seized during execution of the no-knock warrant from being introduced at trial and to preclude any attempt by appellant to cross-examine the state's witnesses regarding the seized evidence. The state argued the evidence seized was irrelevant to the charges appellant faced and its introduction, either as evidence or by reference on cross-examination, would result in jury confusion. Appellant did not oppose the motion and the trial court granted the state's motion upon the commencement of trial on June 11, 2018. Following the trial

court's order on these preliminary motions, the matter proceeded to trial where the following facts were established.

{¶ 4} On November 16, 2017, officers from the Toledo Police Department SWAT team were executing a no-knock search warrant at appellant's residence on Caroline Street in Toledo, Ohio. Detective J.P., the victim in Count 2 of the indictment, obtained the warrant and coordinated with the SWAT team on its execution. At approximately 2:00 a.m., the SWAT team and supporting officers, including J.P., arrived at appellant's residence. Officer R.K., the victim in Count 1 of the indictment and a member of the SWAT team, was the first to approach the door of the residence. He was followed immediately by officers R.J. and P.F., victims in Counts 3 and 4 of the indictment, respectively.

{¶ 5} When the team reached appellant's doorway, they encountered a metal security door. R.K. opened the security door and let it hang to the right side of the doorway. Officer B.K., who remained on the front lawn, then fired a distractionary device through the front window of the residence. The device consisted of small wooden dowels, known as "knee knockers," which bounce through the room into which they are fired with the purpose of distracting any individuals present. Immediately after the knee knockers were deployed, R.J. shouted "police, search warrant." Nearly simultaneously, P.F. swung a battering ram into the residence's front door forcing it open. R.K., serving as the "point man" and carrying a shotgun, immediately proceeded through the now-open doorway.

3.

{¶ 6} Upon entering the doorway, R.K. looked to his left to see appellant holding a pistol aimed at him. Appellant began firing and R.K. immediately retreated through the doorway and yelled "shots fired." R.K., R.J. and P.F. remained on appellant's porch until appellant stopped shooting. At that point, they, along with the remaining SWAT team members entered the residence and found appellant lying on a couch. The firearm appellant used was not immediately observable. The SWAT team completed a search of the house and located appellant's wife in the kitchen. They secured appellant and began searching the area in his immediate vicinity. In doing so, R.J. moved a sheet from the couch and discovered a pistol. Appellant was then arrested.

{¶ 7} While the SWAT team was executing the warrant, J.P. was tasked with watching the exterior of the residence to assist in apprehending any individuals running away. As the doorway was breached, J.P. began walking closer to the residence. As he moved, he was struck in the face by one of the bullets appellant fired. J.P. received medical treatment at the scene and was transported by ambulance to the hospital. J.P. suffered significant injuries and ultimately underwent surgery to replace a portion of his jawbone with titanium. At the time of trial, J.P. was scheduled to undergo a second surgery to replace the titanium with bone cultivated from his leg. No other officers suffered physical injuries during the incident.

{¶ 8} Appellant testified at trial. He stated that at approximately 1:30 A.M. on the morning of the incident, he fell asleep on his couch while watching television. At that time, he was tired and disoriented as a side effect of prescribed painkillers he was taking

4.

following a recent surgery. He next recalled awakening to the sound of glass breaking and feeling glass falling on him. He stated he was confused due to the effects of the painkillers and took a moment to process what was happening. Also, he was already nervous about someone breaking into his residence due to a window at the rear of the house having been broken earlier in the evening. After he awoke, he heard a second window break and reached for a gun sitting nearby. He then heard a commotion on the porch and saw his door knob turning suggesting someone was trying to gain entry to the residence. He immediately fired his gun toward the door. He testified that prior to firing the weapon that the door did not open and no officers had entered the residence. He stated his reasoning for firing the gun was that he feared for his and his wife's safety. Finally, appellant testified that after he finished firing his weapon, he saw the SWAT officers entering the doorway and, realizing they were police officers, laid back down and held his hands up. As the officers approached him, appellant offered an apology and stated he did not realize he was shooting at police officers.

{¶ 9} Appellant was charged with seven counts of felonious assault of a peace officer—one count each for six SWAT team members and one count for J.P.—each including a firearms specification. Appellant was also charged with possession of a firearm while under disability. On June 14, 2018, following a four-day trial, the jury found appellant guilty on all counts.[1] Appellant was immediately sentenced. On the

---

[1] Appellant does not assign any error to his conviction on Count 8 of the indictment.

5.

following day, June 15, 2018, the trial court's judgment entry sentencing appellant to an aggregate prison sentence of 47 years and imposing costs of prosecution, appointed counsel fees, and costs, was filed. Appellant timely appeals from the trial court's judgment and asserts the following errors for our review:

1. The trial court erred in denying appellant's Crim.R. 29 motion;

2. The jury's verdict was against the manifest weight of the evidence presented at trial; and

3. The trial court committed error to the prejudice of appellant by imposing the costs of prosecution without consideration of appellant's present or future ability to pay.

## A. Crim.R. 29 Motion

{¶ 10} In his first assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motion for acquittal on Counts 3, 4, and 7. These counts charged appellant with felonious assault of three different police officers—R.J., P.F., and D.M. Felonious assault is a violation of R.C. 2903.11(A) which states:

No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

6.

Appellant was convicted of violations of R.C. 2903.11(A)(2). He argues that the evidence the state introduced was insufficient to support a conviction on Counts 3, 4, and 7. We disagree.

{¶ 11} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In denying appellant's Crim.R. 29 motion for acquittal, the trial court determined the state presented sufficient evidence on Counts 3, 4, and 7 to allow those charges to be determined by the jury.

{¶ 12} Appellant makes two arguments why the trial court's denial of his Crim.R. 29 motion constitutes error. Appellant's first argument contends the enhancement of his felonious assault convictions to a first-degree felony was error because he did not know the individuals entering his residence were peace officers. Generally, a violation of R.C. 2903.11(A) is a second-degree felony. However, when the victim is a peace officer, the offense is enhanced by operation of law to a first-degree felony. R.C. 2903.11(D)(1)(a). Appellant argues that because the state did not present sufficient evidence that he knew

7.

the victims were peace officers, the peace officer enhancement should not apply to his convictions. Appellant's argument presumes the state had the burden of proving appellant knew at the time of the shooting that the victims were police officers.

{¶ 13} We have previously considered this specific argument and found it to be without merit. In *State v. Phillips*, 6th Dist. Wood Nos. WD-16-020, WD-16-028, WD-16-029, 2017-Ohio-7107, we held "[t]he state need not have proved that [a defendant] knew that he was shooting at a police vehicle in order to enhance the offense under R.C. 2903.11(A)(2)(D)(1), the peace officer specification." *Id.* at ¶ 60, citing *State v. Mundy*, 9th Dist. Medina No. 05CA0025-M, 2005-Ohio-6608, ¶ 9-10; *see also State v. Middleton*, 5th Dist. Stark No. 1997CA00158, 1998 WL 516304 (Jan. 20, 1998). Because the state was not required to present evidence appellant knew the victims were peace officers, appellant's Crim.R. 29 motion fails as a matter of law.

{¶ 14} Appellant next argues that the state failed to present sufficient evidence he was aware of the number of SWAT team members preparing to enter on the no-knock warrant. Because he was unaware of the number of officers, appellant argues, he could not have knowingly attempted to cause those unknown officers physical harm in violation of R.C. 2903.11(A)(2). This argument is also without merit.

{¶ 15} We have previously determined that a defendant's knowledge of the number of potential victims is unnecessary in proving the elements of felonious assault. In *State v. Gowdy*, 6th Dist. No. E-06-071, 2009-Ohio-385, ¶ 28-29, defendant Gowdy and a codefendant were charged with two counts of complicity to commit felonious

8.

assault. Gowdy and his codefendant's charges were premised on the discharge of a firearm into the residence of a Sandusky County police department detective. Gowdy and his codefendant were found driving together in the vicinity of the shooting. The van in which they were driving was fitted with a holster designed to carry a .380 semiautomatic or automatic pistol. Gunshot residue was found on the van's door frames and windows as well as Gowdy's hands. Additionally, the bullet fired into the detective's home, as well as one found nearby, were determined to have been fired from the same .380 semiautomatic or automatic pistol. The bullet passed through a window just above where the detective and his wife were sleeping. Based on this evidence, Gowdy was charged with and convicted of two counts of complicity to commit felonious assault. The victims of these counts were the detective and his wife who were both asleep in the residence at the time of the incident.

{¶ 16} Following his conviction, Gowdy appealed and argued the state failed to present sufficient evidence that either he or his codefendant were aware the detective and his wife were present in the home at the time the firearm was discharged into their window. We rejected this argument finding "[f]iring a pistol into a window, without knowing who could be behind it, satisfies a knowing attempt to cause physical harm." *Id.*, citing *State v. Elko*, 8th Dist. Cuyahoga No. 83541, 2004-Ohio-5209, ¶ 54. The evidence showed a bullet was fired into the residence through a window immediately above where the victims were sleeping. We concluded this evidence was sufficient to satisfy the elements of R.C. 2903.11(A)(2). Gowdy and his accomplice's alleged lack of

9.

knowledge as to who occupied the residence at the time of the incident had no impact on the sufficiency of the state's evidence. *Id.*

{¶ 17} We reach the same conclusion here. The evidence presented by the state reflects that Officers R.J. and P.F. were on the left side of the doorway when D.K. entered the residence. They remained in this position when appellant began firing the weapon. R.J. testified that he was directly behind D.K. P.F. testified that the gunfire was coming from his left just inside the doorway. At the same time, D.M. was positioned just off the front porch with a view of the doorway. D.M. testified that he could hear the gunshots to his left as he watched the exterior of the residence to determine if any individuals exited through another door.

{¶ 18} The state also presented testimony from Detective Terry Cousino of the Toledo Police Department's Scientific Investigation Unit. Detective Cousino created a reconstruction of the scene and determined that R.J. was in the direct line of fire of bullets that entered the door frame. Cousino also testified that P.F. and D.M. were not in the direct line of fire of any shots analyzed but he considered them to be at risk based on their proximity to the gunfire.

{¶ 19} Just as in *Gowdy*, appellant indiscriminately fired a gun into an area without knowledge of how many individuals he might endanger. In both cases, it is the firing of a weapon into an area without knowledge of its occupants that is sufficient to establish a knowing attempt to cause physical harm. In this case, victims D.K., P.F., and

D.M. occupied the area into which appellant fired and the state presented sufficient evidence as to appellant's knowing attempt to cause them physical harm.

{¶ 20} Viewing this evidence in a light most favorable to the prosecution we find that a rational juror could find the "knowingly" element of Counts 3, 4, and 7 were proven beyond a reasonable doubt.[2] *Smith*, 80 Ohio St.3d at 113, 684 N.E.2d 668. Therefore, we find the state presented sufficient evidence in support of these counts and properly denied appellant's Crim.R. 29 motion for acquittal. Appellant's first assignment of error is found not well-taken.

**B. Manifest Weight**

{¶ 21} In appellant's second assignment of error, he alleges the jury's verdict was against the manifest weight of the evidence. We previously stated:

> [w]hen examining whether a conviction was contrary to the manifest
>
> weight of the evidence, the appellate court serves as a 'thirteenth juror' to
>
> conclude whether the trial court lost its way so significantly as to result in a

---

[2] We note the state's argument that appellant's intent to cause great physical harm to R.K transferred to the victims identified in Counts 3, 4, and 7. We agree that proof of the mens rea element requiring knowing conduct for a felonious assault conviction can be shown through transferred intent. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 144; *State v. Reese*, 1st Dist. Hamilton Nos. C-060676 and C-060577, 2007-Ohio-4319, ¶ 23. However, under our holding in *Gowdy* an offender knowingly attempts to cause physical harm to those in proximity to their conduct in using a deadly weapon. Appellant's conduct shows his knowing conduct was directed at the victims identified in Counts 3, 4, and 7 as they were in close proximity to the bullets appellant fired. It is not necessary to analyze transferred intent to resolve this particular appeal.

11.

manifest miscarriage of justice, necessitating that the conviction be overturned. In reaching this determination, we grant substantial deference to the trial court's decision given its unique opportunity to consider the evidence presented and to closely observe and assess the demeanor and credibility of the witnesses."

*State v. Butler*, 6th Dist. Lucas No. L-08-1390, 2010-Ohio-178, ¶ 11 (internal citations omitted). We note that questions regarding the "weight and credibility of evidence are primarily for the trier of fact." *State v. Teal*, 6th Dist. Lucas Nos. L-15-1280 and L-15-1281, 2017-Ohio-7202, ¶ 58, citing *State v. Pena*, 6th Dist. Lucas No. L-12-1309, 2014-Ohio-423, ¶ 22. This court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st. Dist.1983). Under these guidelines, we find no error in appellant's conviction.

{¶ 22} The record reflects testimony from each SWAT team member regarding the underlying incident. Each officer testified that the team approached the doorway to appellant's residence in the early morning hours. Once there, they opened a metal screen door. They then discharged a distractionary device through the front window of the residence. R.J. then announced their presence and that they were serving a search warrant. P.F. then breached the front door with a ram and D.K. entered the residence. He was immediately met with gunfire and retreated back to the porch. After the gunfire

12.

ended, the team proceeded into the residence where they found appellant in a prone position on the couch with his hands raised. Each officer identified appellant as the individual who fired the weapon. Each officer also testified that no one touched the doorknob prior to entering the residence.

{¶ 23} All of the officers utilized a security video of the incident to assist in describing their testimony. Additionally, the state offered the testimony of investigators to recreate the incident scene for the jury and show each victim's proximity to appellant's gunfire. Detective Cousino also testified that appellant's version of events was impossible. During his investigation, Detective Cousino noted the bullets appellant fired struck the outside of the door. He testified that this could only have occurred after the door had been opened and the outside portion of the door was exposed to appellant inside the residence. Had appellant fired the bullets prior to the door being opened, as appellant previously stated, the bullets would have struck the inside of the door. Detective Cousino testified that this scenario was impossible based on the physical evidence recovered from the scene.

{¶ 24} In his own testimony, appellant does not deny firing a weapon. He stated, however, that after he heard his front window shatter he saw his doorknob being turned. He stated that he feared for his and his wife's safety because a different window had been broken late the previous evening and he thought that someone was now breaking into his home. Appellant also attributed his action to his confused state as a side effect from prescribed pain medication. Appellant stated that because of this confusion and his fear

13.

of harm from an intruder, he began firing a weapon at the door prior to its opening. Appellant did not introduce any evidence or elicit testimony from an expert witness regarding how his prescribed medication impacted his ability to perceive these events.

{¶ 25} On cross-examination, appellant conceded that he did not file a police report for the window which was broken earlier in the night. He also acknowledged that he did not discharge a firearm in response to the window breaking earlier. When questioned about apparent inconsistencies in his testimony when compared to video of the incident, appellant disputed the authenticity of the video and its accompanying audio. Finally, despite his argument that he acted in self-defense, appellant stated during his testimony "I wasn't acting in self-defense." Neither appellant nor his counsel made any effort to explain or clarify this statement.

{¶ 26} Having reviewed the record, including the physical evidence and witness testimony, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. We find the state presented substantial evidence supporting each element of the felonious assault charges against defendant. Further, we do not find that the jury lost its way in denying appellant's claim of self-defense following his inconsistent testimony. For these reasons, the jury's verdict was not against the manifest weight of the evidence and appellant's second assignment of error is found not well-taken.

14.

## C. Costs

{¶ 27} Appellant's third assignment of error argues the trial court erred in imposing the costs of prosecution, court-appointed counsel fees, and costs of confinement without first determining whether appellant had the ability, or would have the ability in the future, to pay these costs. We agree, in part.

{¶ 28} The costs of prosecution are mandatory and their imposition against a defendant is not conditioned on their ability to pay. *State v. Lantz*, 6th Dist. Fulton No. F-18-011, 2019-Ohio-3307, ¶ 12, 18. The trial court properly imposed these mandatory costs against appellant.

{¶ 29} However, appointed counsel fees and confinement costs are not mandatory and "must be conditioned on appellant's ability to pay." *State v. Wymer*, 6th Dist. Lucas No. L-18-1108, 2019-Ohio-1563, ¶ 14. Prior to imposing these non-mandatory costs, "the trial court must affirmatively find that the defendant has, or reasonably may be expected to have, the ability to pay." *Id.*; *State v. Grey*, 6th Dist. Lucas No. L-15-1072, 2015-Ohio-5021, ¶ 21. While the court need not conduct a formal hearing as to the defendant's ability to pay these costs, a finding of his ability to pay must be supported by clear and convincing evidence in the record. *Id.* When the record on appeal contains no evidence reflecting the trial court's consideration of present or future ability to pay these costs—such as consideration of defendant's age, health, employment history, or level of education—the imposition of these costs is improper and must be vacated. *State v. Stovall*, 6th Dist. Lucas No. L-18-1048, 2019-Ohio-4287, ¶ 37.

15.

{¶ 30} Here, the trial court failed to make any finding regarding appellant's ability to pay the non-mandatory costs at his sentencing hearing. The trial court's judgment entry, however, reflects such a finding. Imposing these non-mandatory costs in the sentencing entry without engaging in the necessary analysis to determine appellant's ability to pay them constitutes error. *Wymer* at ¶ 14. For that reason, appellant's third assignment of error is found well-taken, in part, as to the trial court's imposition of appointed counsel fees and confinement costs. We therefore vacate the imposition of these costs. The imposition of the costs of prosecution remains undisturbed by this decision.

## II. Conclusion

{¶ 31} Appellant's first and second assignments of error are found not well-taken. Appellant's third assignment of error is found well-taken, in part, and the trial court's imposition of appointed counsel and confinement costs are vacated. The June 15, 2018 judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed and vacated, in part, as described in this decision. Appellant and the state are ordered to split the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part, and<br>reversed and vacated, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.              _____
                                                        JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.                   _____
CONCUR.                                              JUDGE


                                     _____
                                                        JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.