[Cite as *State v. Mitchell*, 2020-Ohio-4132.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108691 |
| v. | : | |
| CHRISTIAN MITCHELL, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** August 20, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-614060-B

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Blaise Thomas, Assistant Prosecuting
Attorney, *for appellee.*

Robert A. Dixon, *for appellant.*

PATRICIA ANN BLACKMON, J.:

{¶ 1} Defendant-appellant Christian Mitchell appeals from his convictions

for aggravated murder, aggravated robbery, having a weapon while under disability,

and kidnapping in connection with the shooting death of Tionna Young ("Young"). Mitchell assigns the following errors for our review:

I. The lower court erred and denied [Mitchell] his constitutional right to a fair trial when it incorrectly instructed the jury on the issue of intent required for the commission of aggravated murder.

II. The verdict and judgment below finding [Mitchell] guilty of aggravated murder was against the manifest weight of the evidence.

III. The verdicts below finding [Mitchell] guilty of aggravated murder was based upon legally insufficient evidence and must be reversed.

IV. [Mitchell] was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

{¶ 2} Having reviewed the record and the controlling case law, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

{¶ 3} On February 17, 2017, following the shooting death of Young, Mitchell and Derrell Odom ("Odom") were indicted in a multicount indictment. As is relevant herein, twelve of the charges pertained to Mitchell. He was charged with aggravated murder and murder, both with one-year and three-year firearm specifications, and aggravated robbery, felonious assault, and seven counts of kidnapping, all with one-year and three-year firearm specifications, a repeat violent offender specification, and notice of a prior robbery conviction.

{¶ 4} Odom subsequently entered into a plea agreement with the state. Odom pled guilty to involuntary manslaughter and having a weapon while under

disability. The remaining charges against him were dismissed. Odom's plea also included the requirement that he testify in Mitchell's trial. Odom was sentenced to two years of community control sanctions. The case against Mitchell proceeded to a jury trial on April 24, 2019.

{¶ 5} Moesha Sharp ("Sharp") testified that on the morning of February 1, 2017, she was at her home on East 140th Street with her children, her boyfriend Richard Hodges ("Hodges"), her friend Kyla Tyler ("Tyler"), and Tyler's child. Young, an acquaintance of Sharp and Hodges, arrived at the apartment unexpectedly with Mitchell. Young and Mitchell sat in the living room, and Sharp took the children to a bedroom to watch television. Minutes later, Sharp heard "a nice amount" of gunshots. Young rushed into the bedroom, asked her to call 911, then fell to the floor. Mitchell ran into the room and told Young to get up because they had to go. According to Sharp, Mitchell had a gun in his hand.

{¶ 6} Sharp stated that Mitchell ran to the living room and opened the front door. She told him, "I don't know who is shooting but my kids are here." Mitchell closed and locked the front door and exited the apartment from a side door. Sharp waited inside with Young. When paramedics arrived, Sharp noticed a man lying out in the street. The paramedics began to attend to the man, and Sharp requested that they come inside to take care of Young.

{¶ 7} Hodges testified that Young arrived at the apartment unexpectedly with Mitchell. They sat on the couch and were texting on their phones. Mitchell

"adjusted his waistband," and Hodges noticed that he had a gun. At that point, Mitchell told Hodges to "be cool."

{¶ 8} Hodges next testified that Mitchell and Young subsequently let a second man into the apartment, and Mitchell immediately "start opening fire on the guy that just walked in the house." At that point, the second man "went over to the other side of the couch and started opening fire[.]" According to Hodges, Mitchell was the first to shoot and fired approximately five shots. Hodges briefly hid in the bathroom and when he came out, he saw the second man run out of the house. At that point, Young cried out that she had been hit.

{¶ 9} Tyler testified that when Young and Mitchell arrived at the apartment, she went to a rear room. She later heard gunshots, and Young said that she had been hit.

{¶ 10} Dr. Erica Armstrong ("Dr. Armstrong"), a forensic pathologist with the Cuyahoga County Medical Examiner's Office, testified that Young died from a gunshot wound that caused massive injuries to her lungs and heart. There was no fouling or stippling near the wound, indicating that Young was not struck at close range.

{¶ 11} Cleveland Police Officer Jovan Larkin ("Officer Larkin") testified that he arrived on the scene and spoke to Odom who was lying in the street and crying out in pain. Odom told the officer that he had been robbed and shot by a man who was still inside the house.

{¶ 12} Cleveland Police Detective David Borden ("Det. Borden") testified that he observed blood on the street outside of the house and found a .40-caliber Ruger firearm nearby. Inside the house, Det. Borden observed numerous defects in the wall of the apartment and 9 mm and .40-caliber shell casings. Det. Borden stated that both Mitchell and Odom were suspects in Young's death. Det. Borden subsequently spoke with Odom and also spoke to Mitchell's friend, Lashunda Adams ("Adams"). Det. Borden also obtained information from Mitchell's and Young's Facebook pages that indicated that Mitchell was selling stolen merchandise, and Young sent a Facebook message to Odom immediately before the shooting.

{¶ 13} Odom testified pursuant to his plea agreement with the state. In exchange for his guilty plea to involuntary manslaughter and having a weapon while under disability, plus his testimony against Mitchell, Odom was to receive a maximum of six years in prison.

{¶ 14} Odom testified that he knew Mitchell prior to the shooting but did not know Young. On the night before the shooting, he bought clothes from Mitchell. He paid Mitchell $60, but later surreptitiously took the money back when Mitchell was not looking. The next day, Odom had a Facebook interaction with "Monica Luinski." Odom agreed to meet with her for a "hookup" at a home on East 140th Street. He arrived at the location armed with a .40 caliber handgun. Young identified herself as "Monica," and demanded the gold chain Odom was wearing. As Odom realized that he had been set up for a robbery, Mitchell came out from behind an archway and immediately fired upon him. Odom was struck in the hip. Odom maintained

that Young fled from the room before he pulled out his weapon and returned fire. Odom stated that he fired off five shots, and Mitchell shot "multiple times." Odom then fled outside and collapsed nearby.

{¶ 15} Odom acknowledged that in his first statement to police, he untruthfully claimed that Young had given him the weapon that he used during the incident.

{¶ 16} Adams testified that at approximately 11:20 a.m., on the morning of the shooting, Mitchell texted her "911." Adams did not respond, and Mitchell sent a second text to "call ASAP." Adams again refused to respond. Mitchell came to her house two days later. He went to her basement to speak with someone on his cell phone, but Adams was able to listen to Mitchell's side of the phone call. According to Adams, Mitchell stated that Young insisted on having revenge on someone. Mitchell stated that he shot the man while he was sitting with Young, but as the man fled from the scene, he returned fire, killing Young. To Adams, it was apparent from the conversation that Mitchell was the first to shoot.

{¶ 17} On April 29, 2019, the jury found Mitchell not guilty of murder, but guilty of aggravated murder, aggravated robbery, three counts of kidnapping, and having a weapon while under disability, along with the firearm specifications, repeat violent offender specification, and notice of prior robbery conviction. On May 15, 2019, the trial court sentenced Mitchell to 26 years to life imprisonment.

**Jury Charge -Transferred Intent**

{¶ 18} In the first assigned error, Mitchell argues that the trial court erred in instructing the jury on transferred intent to commit aggravated murder. Mitchell argues that the trial court's instruction erroneously permitted the jury to convict him of aggravated murder of Young if they found that he "intended to cause the death of or injury to Odom," and thus eliminated the state's statutory burden of proving his specific intention to cause death.

{¶ 19} Generally, "[i]n examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights.'" *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 115, quoting *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93, 652 N.E.2d 671 (1995), quoting *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990). Whether the jury instructions correctly state the law is a question that is reviewed de novo. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 135.

{¶ 20} However, Mitchell did not object to the jury instructions given, so we review for a determination of whether the trial court committed plain error. *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92, ¶ 31 (4th Dist.). A defective jury instruction does not rise to the level of plain error unless the defendant shows that the outcome of the trial clearly would have been different but for the alleged erroneous instruction. *Id.* at ¶ 32, citing *State v. Campbell*, 69 Ohio St.3d

38, 630 N.E.2d 339 (1994) and *Cleveland v. Buckley*, 67 Ohio App.3d 799, 588 N.E.2d 912 (8th Dist.1990).

{¶ 21} R.C. 2903.01(B) defines aggravated murder as follows:

[N]o person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, trespass in a habitation when a person is present or likely to be present, terrorism, or escape.

{¶ 22} Purpose is defined in R.C. 2901.22(A) as follows:

A person acts purposely when it is his specific intention to cause a certain result, or when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

{¶ 23} Purpose to kill is required in order to establish the offense of aggravated murder. *State v. Phillips*, 74 Ohio St.3d 72, 100, 656 N.E.2d 643 (1995). Under the doctrine of transferred intent, however, "'if one purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder in violation of R.C. 2903.01(A).'" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 171, quoting *State v. Sowell*, 39 Ohio St.3d 322, 332, 530 N.E.2d 1294 (1988), paragraph one of the syllabus. *See also Bradshaw v. Richey*, 546 U.S. 74, 75, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) (concluding that transferred intent is also applicable to aggravated felony murder under R.C. 2903.01(B)). *Accord State v. Stoddard*, 2015-Ohio-3750, 42 N.E.3d 264,

¶ 26 (9th Dist.) (transferred intent doctrine applies to aggravated felony murder, so the culpability of a scheme designed to implement the calculated decision to kill is not altered by the fact that the scheme is directed at someone other than the actual victim); *State v. Wilmore*, 8th Dist. Cuyahoga No. 89960, 2008-Ohio-3148, ¶ 23-24.

{¶ 24} In this matter, the jury instructions provided:

A person acts purposely when it is his specific intention to cause a certain result or engage in conduct of a certain nature. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to cause the death of Tionna Young. Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct. The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means or weapon used, and all other facts and circumstances in evidence.

If you find that the defendant was attempting to cause the death of or injury to Derrell Odom, and that his act unintentionally caused the death of Tionna Young, then the defendant is as responsible as if his act did harm Derrell Odom.

{¶ 25} The state notes that the initial portion of the instruction correctly instructed that specific intent to cause death had to be proven, and no objection was raised. However, in *State v. Gettys*, 49 Ohio App.2d 241, 244, 360 N.E.2d 735 (3d Dist.1976), the court held that where both correct and incorrect instructions upon the same subject have been given to the jury, and where from the whole charge it is uncertain which rule the jury adopted, the judgment should be reversed. We agree

with that reasoning and find it applicable where, as here, they found that he "intended to cause the death of or injury to Odom," and thus eliminated the state's statutory burden of proving his specific intention to cause death.

{¶ 26} The state also submits, in the event that we find prejudicial error, to simply modify the conviction from aggravated murder to a lesser included charge of felony murder. This court has authority to modify convictions in certain instances in accordance with the Ohio Constitution, Article IV, Section 3(B)(2). However, where prejudicially erroneous jury instructions have been provided, this court generally remands for a new trial if the conviction is supported by sufficient evidence. *State v. Woods*, 2016-Ohio-661, 47 N.E.3d 894, ¶ 19 (10th Dist.).

{¶ 27} In accordance with the foregoing, this assignment of error is well-taken.

## Sufficiency of the Evidence

{¶ 28} In the third assigned error, Mitchell argues that there is insufficient evidence to support his conviction for aggravated murder.

{¶ 29} Although our disposition of the previous assigned "error [pertaining to jury instructions] clearly moots a majority of the remaining assigned errors, the sufficiency of the evidence assignment must be addressed because a reversal on sufficiency grounds would bar retrial on the counts affected." *State v. Lett*, 160 Ohio App. 3d 46, 2005-Ohio-1308, 825 N.E.2d 1158, ¶ 18 (8th Dist.), citing *State v. Suber*, 154 Ohio App.3d 681, 691-692, 2003-Ohio-5210, 798 N.E.2d 684, ¶ 30 (10th Dist.), citing *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶ 30} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would support a conviction. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 31} The aggravated murder statute provides, in relevant part, that "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated burglary * * *." R.C. 2903.01(B). Pursuant to R.C. 2901.22(A):

> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

{¶ 32} Whether an offender had the specific intent to kill is a fact-dependent inquiry, which can include reviewing the nature of the instrument used, the lethality of the instrument, and the manner in which the wound was inflicted. *State v. Majid*, 8th Dist. Cuyahoga No. 96855, 2012-Ohio-1192, ¶ 23 , citing *State v. Pound*, 2d Dist. Montgomery No. 16834, 1998 Ohio App. LEXIS 4364, *3 (Sept. 18, 1998) and *State v. Robinson*, 161 Ohio St. 213, 218-219, 118 N.E.2d 517 (1954). A firearm is an inherently dangerous instrument. *Id.* The specific intent to kill may be reasonably inferred from that fact, especially when accompanied with evidence demonstrating the offender's intent to use the firearm. *Id.* *See also State v. Brown*, 8th Dist. Cuyahoga No. 92814, 2010-Ohio-661, ¶ 52 (death is the natural and probable consequence of shooting a gun at someone).

{¶ 33} Here, the evidence presented by the state met the sufficiency standard as set forth in *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, and *Jackson*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, so retrial is not barred. That is, solely for the purpose of determining whether retrial may be ordered herein, we conclude that the state met its burden of production below, and its evidence, if believed, and viewed in a light most favorable to the prosecution, supports a conviction for aggravated murder in violation of R.C. 2903.01(B).

{¶ 34} The third assigned error is without merit, so retrial is not barred.

**{¶ 35}** The remaining assigned errors challenging the manifest weight of the evidence supporting the conviction and the effectiveness of Mitchell's trial counsel are moot. App.R. 12(A)(1)(c).

**{¶ 36}** The conviction for aggravated murder is reversed, the remaining convictions are affirmed, and the matter is remanded for a new trial on aggravated murder.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

EILEEN T. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR