[Cite as *State v. Hunt*, 2023-Ohio-1977.]

**[Please see vacated opinion at 2023-Ohio-1566.]**

# COURT OF APPEALS OF OHIO
## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,             :

       Plaintiff-Appellee,       :

                                          No. 111892

       v.                               :

ANTHONY HUNT,            :

       Defendant-Appellant.     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 15, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-658348-B

---

### *Appearances:*

Cullen Sweeney, Cuyahoga County Public Defender, and Rick L. Ferrara, Assistant Public Defender, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory M. Paul, Assistant Prosecuting Attorney, *for appellee*.

ON RECONSIDERATION[1]
EILEEN T. GALLAGHER, J.:

---

[1] The original decision in this appeal, *State v. Hunt*, 8th Dist. Cuyahoga No. 111892, 2023-Ohio-1566, released on May 11, 2023, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

{¶ 1} Defendant-appellant, Anthony Hunt ("Hunt"), appeals his convictions and claims the following errors:

1. Defendant was denied due process of law under the United States and Ohio Constitutions [due to] errors in jury instructions on transferred intent and mistake of fact, and missing instructions on reckless assault.

2. Hunt was denied due process by way of inconsistent verdicts.

3. Prosecutorial misconduct and/or ineffective assistance of counsel in closing arguments.

4. The state of Ohio presented insufficient evidence that appellant did not act in self-defense.

5. The manifest weight of the evidence did not support a conviction of felonious assault.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Hunt was charged with one count of aggravated murder (Count 1), two counts of murder (Counts 2 and 3), two counts of felonious assault (Counts 4 and 5), one count of tampering with evidence (Count 6), one count of having a weapon while under disability (Count 7), one count of illegally possessing a firearm in a liquor-permit premises (Count 8), and two counts of aggravated riot (Counts 9 and 10). The charges were brought against Hunt in connection with the shooting death of Ge'Ongela Rivers ("Rivers") that occurred at My Friends Restaurant in Cleveland, Ohio, on March 22, 2021. Hunt exercised his right to a jury trial on all counts except Count 7, which was tried to the court.

{¶ 4} Skyla Johnson ("Johnson"), Hunt's girlfriend, testified at trial that she was living with Hunt and his brother, Keondre Austin ("Austin"), at the time of the shooting. In the early morning hours of March 22, 2021, Johnson, Hunt, and Austin took an Uber to My Friends Restaurant in Cleveland. (Tr. 993-994.) At the restaurant, they sat in a booth and ate some food.

{¶ 5} Meanwhile, Rivers and her friend, Antonio Ortiz ("Ortiz"), entered the restaurant to order food to go. They were sitting on stools at a counter near the front of the restaurant looking at a menu when they began to interact with Austin, who passed them as he was going outside to see if the Uber Johnson had called was outside the restaurant. (Tr. 1039.)

{¶ 6} While Austin was speaking with Ortiz, Johnson went outside to smoke a cigarette, and Hunt, who remained at the booth, began putting leftover food into carry-out boxes. Hunt testified that as he was packing up the food, he noticed that Austin and Ortiz were engaged in conversation that was not "positive." (Tr. 1040.) Cetewayo Fuller ("Fuller"), a patron from a nearby booth, also stated that the tone of the conversation was "aggressive." (Tr. 577.) Nicole Hanna ("Hanna"), a server who was standing at the counter ringing up a to-go order at the time of the shooting, testified there was "tension" between Ortiz and Austin. (Tr. 829.) Neither Johnson nor Hunt knew Rivers or Ortiz prior to the shooting incident. (Tr. 997, 1031.) Nevertheless, Hunt became concerned for Austin's safety due to the tone of the conversation. (Tr. 1040.)

{¶ 7} Hunt testified that he called Austin back to the booth, in an apparent effort to stop him from engaging with Ortiz. (Tr. 1039-1040.) Surveillance video, admitted into evidence as state's exhibit No. 602 shows that Austin responded to Hunt and began walking back to the booth but then turned back toward Ortiz and Rivers. (Tr. 1041.) State's exhibit No. 602 shows that when Austin walked back toward Ortiz, Ortiz stood up and began walking toward the front door to the restaurant. Austin followed Ortiz, and Hunt followed Austin.

{¶ 8} The video shows that Ortiz walked toward the front of the restaurant and turned toward Austin while drawing a firearm from inside his jacket. Hunt, who was standing behind Austin, almost simultaneously drew a firearm from his inside pocket. Austin was unarmed and Hunt knew he was unarmed. According to Tom Ciula ("Ciula"), the video forensic analyst with the Cleveland Police Department who authenticated state's exhibit No. 602, the video evidence establishes that Ortiz began shooting three twenty-fifths of a second before Hunt began shooting. Both Ortiz and Hunt fired numerous shots at each other. Ortiz shot from behind a wall in the vestibule area of the restaurant, and Hunt fired several shots toward the door, where Ortiz was taking cover. At some point during the shooting, Hunt was shot in the ankle and fell to the floor. In that moment, Ortiz ran out the front door of the restaurant to a car parked in the parking lot and fled the scene, leaving Rivers alone in the restaurant.

{¶ 9} Meanwhile, Hunt realized he had been shot but continued shooting. He explained at trial that he had heard numerous gunshots, he did not know where all

the bullets were coming from, and decided to shoot Rivers, who was behind him because he thought the bullets may have also come from her. He explained:

> Well, I couldn't understand where the gunshots were coming from. And when I finally realized that I was shot, I heard movement behind me, and I really didn't have enough time to see who that was behind me or if they had a firearm or not before I had to make a split[-]second decision on whether or not to possibly end the threat that was behind me.

(Tr. 1051.) The video evidence confirms that Hunt quickly decided to shoot Rivers, who was unarmed and running away.

{¶ 10} Upon being shot, Rivers initially fell to the floor but subsequently stood up and walked outside the restaurant where she collapsed. An autopsy revealed that Rivers sustained two gunshot wounds. One wound was composed of injuries to her liver, left kidney, pancreas, abdominal arteries, and portal vein. The other wound was composed of injuries to Rivers's skeletal muscle and cecum. (Tr. 525.) According to Dr. David Dolinak, a deputy medical examiner with the Cuyahoga County Medical Examiner's Office, Rivers died as a result of these injuries. (Tr. 521.) Austin sustained six gunshot wounds and also died from his injuries.

{¶ 11} Hunt argued at trial that he was acting in self-defense when he shot Rivers. Detective Robby Prock ("Det. Prock") of the Cleveland Police Department testified that he collected 21 casings from Ortiz's FN five-seven firearm, most of which were recovered from the vestibule area of the restaurant. (Tr. 681-682.) Det. Prock also recovered 14 cartridge casings from Hunt's Glock. (Tr. 678.) The video

evidence demonstrates that all of the shooting occurred during a six-second timeframe.

{¶ 12} The trial court granted a defense motion for acquittal on Counts 8, 9, and 10, which alleged one count of illegal possession of a firearm in a liquor-permit premises charge and two counts of aggravated riot. Defense counsel requested jury instructions on self-defense, transferred intent, and on lesser-included offenses. The court denied counsel's request for a lesser-included-offense instruction but provided instructions on self-defense and transferred intent.

{¶ 13} The jury found Hunt guilty on Counts 4 and 5, which alleged felonious assault and identified Rivers as the victim, but it acquitted him of the other charges. The court found Hunt guilty of having a weapon while under disability as alleged in Count 7. The court merged Counts 4 and 5 and sentenced Hunt to a minimum of eight years on Count 5, plus three years on an attendant firearm specification for an aggregate minimum prison term of 11 years. The court sentenced Hunt to 36 months on the having weapons-while-under-disability charge and ordered the 36-month sentence to be served consecutive to the sentence on Count 5, for an aggregate minimum 14-year prison term. And, pursuant to the Reagan Tokes Law, the court sentenced Hunt to an indefinite prison term of 14-18 years in prison. Hunt now appeals his convictions.

## II. Law and Analysis

## A. Jury Instructions

{¶ 14} In the first assignment of error, Hunt argues the trial court violated his constitutional right to due process of law when it provided erroneous jury instructions on mistake of fact, self-defense, and transferred intent. He also argues the court erred in refusing to provide instructions on lesser-included offenses.

{¶ 15} A trial court is obligated to provide jury instructions that are warranted by the evidence and reflect a complete and correct statement of the law. *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 22, 29, citing *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312, 649 N.E.2d 1219 (1995), and *Estate of Hall v. Akron Gen. Med. Ctr.*, 125 Ohio St.3d 300, 2010-Ohio-1041, 927 N.E.2d 1112, ¶ 26.

{¶ 16} Whether jury instructions provide a correct statement of the law is a legal issue that an appellate court reviews de novo. *State v. Echevarria*, 8th Dist. Cuyahoga No. 105815, 2018-Ohio-1193, ¶ 27, citing *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 135. However, "'[a] reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted prejudicial error.'" *State v. Shepherd*, 8th Dist. Cuyahoga No. 102951, 2016-Ohio-931, ¶ 25, quoting *State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041, ¶ 27. To establish prejudice, the defendant must establish that the error had an impact on the verdict. *State v.*

*Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37, citing *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 25, 27.

## 1. Transferred Intent

{¶ 17} Hunt first asserts that the trial court gave an erroneous transferred-intent instruction.  He contends the court's instruction impermissibly lowered the state's burden of proof.

{¶ 18} As previously stated, although we generally review a trial court's decision on jury instructions for an abuse of discretion, whether jury instructions provide a correct statement of the law is a legal issue that an appellate court reviews de novo.  *Echevarria* at ¶ 27, citing *Dean* at ¶ 135.  An incorrect or inadequate instruction that misleads the jury or otherwise prejudices the defendant constitutes reversible error.  *See Simbo Props. v. M8 Realty, L.L.C.*, 2019-Ohio-4361, 149 N.E.3d 941, ¶ 18 (8th Dist.).

{¶ 19} Under the doctrine of transferred intent, even if the victim was not the intended target, a defendant is as criminally culpable for the harm caused to the actual victim as he would be if the victim had been the intended target.  *State v. Calhoun*, 2015-Ohio-5505, 57 N.E.3d 139, ¶ 16 (12th Dist.), citing *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, ¶ 16 (upholding a juvenile's adjudication for aggravated rioting and complicity to felonious assault where the juvenile's intent to harm one victim was transferred to two other victims).

{¶ 20} The trial court gave the following jury instruction on transferred intent:

> If you find that the Defendant intended to cause the death of Antonio Ortiz and that his act unintentionally or accidentally caused the death of Ge'Ongela Rivers, the Defendant is as responsible as if his act had harmed Antonio Ortiz.

(Tr. 1195.) The language in this instruction is nearly identical to the instruction at issue in *Mitchell* at ¶ 24-25. In *Mitchell*, we held that the transferred-intent instruction provided in that case erroneously eliminated the state's statutory burden of proving the defendant's specific intention to cause death.[2] Hunt argues, citing *Mitchell*, that the transferred-intent instruction in the instant case is similarly erroneous. However, because the evidence does not support a finding of transferred intent, we find the jury instruction, erroneous or not, is immaterial.

{¶ 21} The video evidence depicted in state's exhibit No. 602 shows that Hunt fired several rounds at Ortiz while Ortiz simultaneously fired 21 rounds in Hunt's direction. Therefore, the jury could reasonably conclude that Hunt intended to cause the death of Ortiz. But the jury acquitted Hunt of all murder charges. The video evidence depicted in state's exhibit No. 602 shows that Hunt initially fired his weapon toward the front of the restaurant where Ortiz was hiding behind a wall in the vestibule area of the restaurant. After Hunt was shot in the ankle, he fell to the floor and stopped shooting momentarily, and Ortiz escaped out the front door of the restaurant.

---

[2] In *Mitchell*, this court found the transferred-intent instruction amounted to plain error because it failed to define the mens rea of "purposely," which was a required element of aggravated murder. The trial court in this case provided definitions of all the required mens rea elements.

{¶ 22} Hunt testified that after he was shot, he heard noises behind him, and he did not know if some of the gunshots he had heard had come from behind him. (Tr. 1051.) The video evidence shows that after Hunt fell to the ground, he rotated 180 degrees, turning toward the rear of the restaurant, and shot Rivers, who was behind him. Ortiz could not have been Hunt's intended target when he shot Rivers because Ortiz was in the front of the restaurant, and Rivers was near the rear of the restaurant. Ortiz was in front of Hunt, and Rivers was behind him. Therefore, even if Hunt had intended to kill Ortiz, the evidence does not support a finding that the intent to kill Ortiz transferred to Rivers, who was in the opposite direction of Ortiz.

{¶ 23} Moreover, the jury found Hunt guilty of two counts of felonious assault as alleged in Counts 4 and 5 of the indictment. The court separately instructed the jury regarding the felonious assault charges as follows:

> Count 4, felonious assault, 2903.11(A)(1). The Defendant, Anthony Hunt, is charged with felonious assault, in violation of Revised Code 2903.11(A)(1) in Count 4 of the indictment.
>
> Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 22nd day of March, 2021, and in Cuyahoga County, Ohio, Defendant, Anthony Hunt, did knowingly cause serious physical harm to Ge'Ongela Rivers.
>
> * * *
>
> A person acts knowingly, regardless of purpose, when the person is aware that person's conduct will probably cause a certain result or be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if the person subjectively believes there is a high probability of the existence and fails to make inquiry of acts with a conscious purpose to avoid learning the fact.

Because you cannot look in the mind of another, knowledge is determined from all of the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the Defendant an awareness of the probability that he would cause serious physical harm to Ge'Ongela Rivers.

* * *

The Defendant, Anthony Hunt, is charged with felonious assault in violation of 2903.11(A)(2) in Count 5 of the indictment.

Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 22nd day of March, 2021, and in Cuyahoga County, Ohio the Defendant did knowingly cause or attempt to cause physical harm to Ge'Ongela Rivers by means of a deadly weapon or dangerous ordnance, to-wit: A Glock 19 handgun.

(Tr. 1184-1185.) The evidence supports the jury's finding that Hunt knowingly caused serious physical harm to Rivers, independent of any transferred intent to kill Ortiz. This is not a case where Hunt was aiming at Ortiz and accidentally shot Rivers, who happened to be nearby. Hunt had to turn around 180 degrees in order to shoot Rivers. Therefore, he was clearly not intending to kill Ortiz when he fired his gun at Rivers and even if the court had provided a more accurate instruction, the outcome of the trial would not have been different. We, therefore, find no abuse of discretion.

## 2. Mistake of Fact

{¶ 24} Hunt argues the trial court also provided an erroneous instruction on mistake of fact while instructing the jury on self-defense. He objects to the following instruction:

In deciding whether the Defendant had reasonable grounds to believe and an honest belief that he was in imminent or immediate danger of

death, you must put yourself in the position of the Defendant, with his characteristics, his knowledge or lack of knowledge, and under the circumstances and conditions that surrounded him at the time. You must consider the conduct of Ge'Ongela Rivers and/or Antonio Ortiz and decide his or her * * * acts and words caused the Defendant to reasonably and honestly believe that the Defendant was about to be killed or receive great bodily harm.

(Tr. 1196.) Hunt contends that by requiring the "honest belief" to be "reasonable," the instruction unjustifiably allowed the state to disprove his self-defense claim based on an erroneous, objective, reasonable-person standard. However, because defense counsel failed to object to this instruction, we review Hunt's assertion for plain error. *Mitchell*, 8th Dist. Cuyahoga No. 108691, 2020-Ohio-4132, at ¶ 20.

{¶ 25} A self-defense claim includes the following elements:

(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 15, quoting *Barnes*, 94 Ohio St.3d at ¶ 24, 759 N.E.2d 1240.

{¶ 26} The second element of a self-defense claim is a combined subjective and objective test. *State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997). The test first requires evidence establishing that the accused had reasonable grounds to believe or an honest belief that he or she was in imminent or immediate danger of death or great bodily harm. *Id*.

[T]he jury first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and

conditions at the time of the attack [he or] she *reasonably believed* [he or] she was in imminent danger.

(Emphasis sic.) *Id.* If this objective standard is met, the jury must then subjectively determine if the defendant had an honest belief, even if mistaken, that he or she was in imminent danger of death or serious injury. *Id.* at 331.

{¶ 27} In *Thomas*, the Ohio Supreme Court reaffirmed a jury instruction on the objective component of the test. The jury instruction, which had previously been affirmed in *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990), stated as follows:

> "In determining whether the Defendant had *reasonable* grounds for an *honest* belief that she was in imminent danger, you must put yourself in the position of the Defendant * * *. You must consider the conduct of [the assailant] and determine if such acts and words caused the Defendant to *reasonably* and **honestly** believe that she was about to be killed or to receive great bodily harm."

(Emphasis added in *Thomas*.) *Id.*, quoting *Koss* at 216-217. The jury instruction to which Hunt objects is virtually identical to the one affirmed by the Ohio Supreme Court. The instruction is an accurate statement of the law relative to the second element of a self-defense claim. We, therefore, find no error in the instruction, plain or otherwise.

### 3. Lesser-Included Offense

{¶ 28} Hunt nevertheless contends the trial court erred in failing to provide an instruction on the lesser-included offense of reckless assault. As previously stated, defense counsel requested a lesser-included offense instruction, but the trial court denied the request.

{¶ 29} Trial courts have broad discretion to determine whether sufficient evidence has been established to warrant a jury instruction on a lesser-included offense. *State v. Henderson*, 8th Dist. Cuyahoga No. 89377, 2008-Ohio-1631, ¶ 10. We, therefore, will not disturb a trial court's decision denying a request for a lesser-included-offense instruction absent an abuse of discretion.

{¶ 30} An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. Such an abuse "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 31} The question of whether a particular offense should be submitted to the finder of fact as a lesser-included offense involves a two-tiered analysis. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13. "The first tier, also called the 'statutory-elements step,' is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense." *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6, citing *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987).

{¶ 32} The second tier requires the court to review the evidence and determine whether "'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072,

865 N.E.2d 859, ¶ 11. "Only in the second tier of the analysis do the facts of a particular case become relevant." *Deanda* at ¶ 6.

{¶ 33} With respect to the first tier, this court has previously recognized that reckless assault is a lesser-included offense of felonious assault. *State v. Miree*, 8th Dist. Cuyahoga No. 110749, 2022-Ohio-3664, ¶ 52, citing *State v. McPherson*, 8th Dist. Cuyahoga No. 92481, 2010-Ohio-64, ¶ 7.

{¶ 34} With respect to the second tier, the Ohio Supreme Court has held that a trial court "must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 34. We must, therefore, look to the evidence in this case and determine whether the "'jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" *Evans* at ¶ 13, quoting *Mosely* at ¶ 11.

{¶ 35} R.C. 2903.13(B) governs reckless assault and provides that "[n]o person shall recklessly cause serious physical harm to another or to another's unborn." Hunt was convicted of two counts of felonious assault in violation of R.C. 2903.11(A)(1) and (2), which provide:

No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶ 36} "It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely to produce serious injury or death." *State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375, ¶ 38, citing *State v. Widner*, 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982). In *Robinson*, we held that due to the inherently dangerous nature of a firearm, "'shooting a gun in a place where there is risk of injury to one or more persons supports the inference that the offender acted knowingly.'" *Id.*, quoting *State v. Hunt*, 8th Dist. Cuyahoga No. 93080, 2010-Ohio-1419, ¶ 19.

{¶ 37} The undisputed evidence established that Hunt caused serious physical harm to Rivers with use of a deadly weapon, to wit: a Glock 19 firearm. Hunt's use of a deadly weapon during the commission of the offense precludes a finding that he acted recklessly because he knew, by virtue of the deadly nature of his firearm, that his gun could cause serious injury or death. It was thus impossible for the trier of fact to find Hunt not guilty of felonious assault but guilty of reckless assault based on the evidence presented. Therefore, the trial court acted within its discretion when it refused Hunt's request for a lesser-included-offense instruction on reckless assault.

{¶ 38} The first assignment of error is overruled.

## B. Inconsistent Verdicts

{¶ 39} In the second assignment of error, Hunt argues he was denied due process of law because the jury reached inconsistent verdicts. He notes that he successfully defended against the felony-murder charge alleged in Count 3, which

was predicated on the felonious assault charges alleged in Counts 4 and 5, but he was found guilty of the predicate charges. He further asserts that because the jury must have found that his self-defense claim applied to the felony-murder charge, the jury should have also applied the defense to the felonious assault charges and that their failure to do so constitutes a violation of due process.

{¶ 40} Ever since the United States Supreme Court decided the seminal case of *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), Ohio courts have held that "a verdict that convicts a defendant of one crime and acquits him of another, when the first crime requires proof of the second, may not be disturbed merely because the two findings are irreconcilable." *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 81. *See also State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047; *State v. Adams*, 53 Ohio St.2d 223, 374 N.E.2d 137 (1978).

{¶ 41} In *Dunn*, the court held that "[c]onsistency in the verdict is not necessary." *Id.* at 393. The Supreme Court upheld Dunn's conviction of "maintaining a common nuisance by keeping for sale at a specified place intoxicating liquor," even though that conviction was inconsistent with his acquittals on charges for unlawful possession and unlawful sale of liquor. *Id.* at 391-394. The court explained that lenity is an appropriate jury power, and while a verdict may result from compromise or mistake on the part of the jury, a judge should not upset the verdict by speculation into such matters. *Id.* at 394. The *Dunn* Court concluded that Dunn's acquittal resulted from the jury's lenity and, therefore, the jury's verdict did

not necessarily "'show that they were not convinced of the defendant's guilt.'" *Id.* at 393, quoting *Steckler v. United States*, 7 F.2d 59, 60 (2d Cir.1925).

{¶ 42} In *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the United States Supreme Court reaffirmed the rule established in *Dunn* and explained:

> [T]he possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest. This possibility is a premise of *Dunn*'s alternative rationale — that such inconsistencies often are a product of jury lenity. Thus *Dunn* has been explained by both courts and commentators as a recognition of the jury's historical function, in criminal trials, to check against arbitrary or oppressive exercises of power by the executive branch.
>
> * * *
>
> We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error worked against them. Such an individualized assessment of the reason for inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.

*Powell* at 66-67. The *Powell* Court further observed that defendants receive adequate protection against jury irrationality or error by a sufficiency-of-the-evidence review at the trial and appellate levels. *Powell* at 68.

{¶ 43} Inconsistent verdicts, alone, do not violate due process. *Id.*; *see also State v. D.D.F.*, 10th Dist. Franklin No. 13AP-688, 2014-Ohio-2075, ¶ 18 (recognizing that "the rendering of dissimilar verdicts based purportedly on the same or similar evidence" is not a due process violation). Therefore, as long as the

jury's verdicts on the felonious assault charges are supported by sufficient evidence, they must remain undisturbed.

{¶ 44} The second assignment of error is overruled.

## C. Prosecutorial Misconduct

{¶ 45} In the third assignment of error, Hunt argues the state engaged in prosecutorial misconduct by impermissibly asserting during closing argument that Hunt should be subject to a negligence or recklessness standard when evaluating his claim of self-defense.

{¶ 46} A prosecutor has considerable latitude during closing argument. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149. The test for prosecutorial misconduct in closing argument is "'whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. Hessler*, 90 Ohio St.3d 108, 125, 734 N.E.2d 1237 (2000), quoting *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). Prejudice is shown when there is a reasonable probability that but for the improper remark by the prosecutor, the result of the trial would have been different. *State v. Stevens*, 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, 58 N.E.3d 584, ¶ 53; *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 105, quoting *State v. Collier*, 8th Dist. Cuyahoga No. 78960, 2001 Ohio App. LEXIS 4663 (Oct. 18, 2001).

{¶ 47} Hunt argues, in the alternative, that because defense counsel failed to object to the prosecutorial misconduct during trial, he was deprived of his constitutional right to the effective assistance of counsel. To establish ineffective

assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the context of ineffective assistance of counsel, prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 48} Hunt objects to the following closing remarks by the prosecutor:

> I am not saying that Anthony Hunt needs to get up off the floor and dust himself off and have a cup of coffee and properly assess the situation. That's not what I am saying. If you take one half second more, you're already turned, already looking at Ms. Rivers as she's running away. Her back is turned. Just take that extra half second. It's your responsibility. You're the one claiming to be acting in self-defense. The situation is unfolding too quickly because he chose for it to unfold too quickly. The harm that Mr. Ortiz causes is reprehensible and distinct from any harm that you could possibly fathom Ms. Rivers had caused to him. You need to slow it down, not the situation. You control the situation. That's a test of reasonableness, my friends. Just one more second, and she's alive today, and we might not be here. It's not reasonable to make assumptions in situations like this.

(Tr. 1229.) Hunt contends these statements lowered the state's burden of proof for conviction. As previously stated, defense counsel failed to object to these remarks and thus forfeited all but plain error. *State v. Freeman*, 8th Dist. Cuyahoga No. 91842, 2009-Ohio-5218, ¶ 17 (failure to object to prosecutor's remarks during closing argument forfeits all but plain error).

{¶ 49} Hunt argues the prosecutor's statements subjected him to a negligence standard of reasonableness, which was lower than the standard that

should have applied to him. However, Hunt fails to identify and explain the standard he claims should have been applied to him instead. Moreover, as previously stated, the reasonableness of a defendant's actions when acting in self-defense involves both a subjective and objective component. *Thomas*, 77 Ohio St.3d at 330, 673 N.E.2d 1339. With respect to the objective component, *Thomas* holds that the jury must consider "all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack" to determine whether he reasonably believed that he was imminent danger when he acted in self-defense. *Id*.

{¶ 50} The prosecutor argued that Hunt had a duty to act reasonably. The prosecutor acknowledged that a defendant may defend himself, but he argued that the defendant cannot unreasonably kill the people around him even though he is under attack. To hold otherwise would negate the objective reasonableness element of a self-defense claim. The prosecutor noted that Rivers had her back turned to Hunt because she was running away when he shot her. Thus, the prosecutor was asking the jury to consider whether Hunt's decision to shoot her was objectively reasonable under these circumstances. There is nothing unfairly prejudicial about this argument because it comports with the objective standard articulated in *Thomas* and is, therefore, consistent with the law on self-defense.

{¶ 51} The third assignment of error is overruled.

## D. Sufficiency of the Self-Defense Claim

{¶ 52} In the fourth assignment of error, Hunt argues the state failed to present sufficient evidence that he did not act in self-defense. However, in *Messenger*, Slip Opinion No. 2022-Ohio-4562, the Ohio Supreme Court explained that "a defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *Id*. at ¶ 25. Because the defendant bears the burden of producing evidence to support a claim of self-defense, a self-defense claim is not subject to a sufficiency-of-the-evidence claim but is, instead, reviewed based on the manifest weight of the evidence.

{¶ 53} Accordingly, the fourth assignment of error is overruled.

## E. Manifest Weight

{¶ 54} In the fifth assignment of error, Hunt argues his felonious assault convictions are against the manifest weight of the evidence.

{¶ 55} In a manifest-weight challenge, the reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which the evidence weighs

heavily against the conviction.'" *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 47, quoting *Thompkins* at 387.

{¶ 56} Hunt was convicted of two counts of felonious assault in violation of R.C. 2903.11(A)(1) and (2), which state, in relevant part, that "[n]o person shall knowingly * * * [c]ause serious physical harm to another or * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Hunt argues that although he had a duty to not act in a negligent or reckless manner when acting in self-defense, a negligence finding is not enough to satisfy the "knowingly" element of the felonious assault statute. However, Hunt is conflating the objective component of the self-defense claim with the mens rea element of the felonious assault charges.

{¶ 57} To find Hunt guilty of felonious assault, the jury had to find that he (1) acted unreasonably in defending himself and (2) knowingly caused serious physical harm to Rivers and attempted to cause her serious harm with a deadly weapon. R.C. 2903.11(A)(1) and (2). Hunt testified, and the surveillance video shows, that Hunt fired several shots at Ortiz, who was hiding behind the wall in the vestibule area of the restaurant. After Hunt was shot and fell to the ground, he continued to hear noises, did not know if the person making the noises posed a threat, and had to make a split-second decision to shoot the person behind him in order to neutralize the potential threat. Hunt does not dispute that he knew he was knowingly going to cause, or attempt to cause, serious physical harm to Rivers when he shot her. He argues that his testimony that he had to make a split-second decision establishes

that he acted reasonably and that the jury's finding that he did not act in self-defense is against the manifest weight of the evidence.

{¶ 58} The surveillance footage of the shooting clearly shows that Rivers had her back turned to Hunt at the time he shot her. She was running away. This evidence is undisputed. The jury determined, based on the evidence, that it was not reasonable for Hunt to shoot Rivers under those circumstances. Having reviewed the evidence, we cannot say that the jury's conclusion is against the manifest weight of the evidence.

{¶ 59} We, therefore, overrule the fifth assignment of error.

{¶ 60} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MARY EILEEN KILBANE, J., CONCUR